HUGHES *v.* MCINTOSH *et al.*

SIMMONS, J.—Under the facts as disclosed by the record, the trial judge did not abuse his discretion in granting the injunction in this case until the facts could be passed upon by the jury.

July 8, 1889.                              *Judgment affirmed.*

Injunction. Before Judge HANSELL. Thomas county. At chambers, March 7, 1889.

T. M. McIntosh filed his bill alleging as follows : On ——day of——, he purchased from Mrs. F. W. Hughes a certain lot in the town of Thomasville, a copy of her conveyance being attached to the bill. Before and at the time of making the conveyance, Mrs. Hughes owned a parcel of land at the corner of Jefferson and Dawson streets, about 210 feet square. She sold complainant a portion of this land, being the lot on the corner of Dawson and Jefferson streets, fronting on Dawson street 72½ feet, and extending "thence back or west from Dawson street 195 feet to an alley 15 feet wide extending from Jefferson street along the rear of said bargained lot, thence south or southwest along the east margin of said alley 72½ feet to Jefferson street, and thence along the south margin of Jefferson street east or nearly east to the beginning point." By virtue of this deed complainant holds and owns an easement in said alley, and Mrs. Hughes threatens to close the alley up by a gate or other structure at the entrance of the alley on Jeffer-

son street, which would greatly injure him. He prayed for injunction against her to restrain this.

At the hearing, S. B. Burr was made a party complainant to the bill. He alleged that he was the owner of a lot, which, on the 12th day of May, 1884, Mrs. Hughes had sold to Mrs. Mary H. Hardaway, the deed from Mrs. Hughes to Mrs. Hardaway being attached. When he was examining the lot with a view of purchasing, he found a fifteen foot alley opening from Jefferson street along the rear of the lot owned by T. M. McIntosh and the lot owned by Mrs. Hardaway to the lot occupied by Mrs. Hughes, affording an easy means of access from Jefferson street to the rear of all three of said lots; that without said alley the lot now owned by him would be of very much smaller value than it is with the alley, the front of his lot being quite narrow, etc. In view of these facts, he would not have been willing to take the place at the price offered but for the alley; and relying on the representations made him, and the fact that said alley was open and in use for the benefit of a large stable on the rear of Mrs. Hughes' lot, where horses were kept for sale or other purposes than the sole use of defendant and her family, as well as for the benefit of the residents on the lot now owned by him and the lot owned by McIntosh, and the wording of the deed to Mrs. Hardaway, which seemed to him to fully sustain the representations made to him, he purchased the lot, went into possession, and made improvements and additions of such a nature as to make it impossible for him to have access to the rear of it for wagons or cattle without great damage to him. He is informed and charges that at the time said lot was sold by the defendant, her husband negotiated the sale to McIntosh and Mrs. Hardaway of the lot on the corner of Dawson and Jefferson streets, fronting 145 feet on Dawson and running back 210 feet; that the price was agreed on and all the preliminaries settled; that the stable on defendant's lot was

already there and in use; that the question of the means of access to this stable and to this complainant's lot arose and was settled by having both deeds made at the same time, each for 72½ feet on Dawson street running back 195 feet to an alley fifteen feet wide. No reduction was made in the price of either of said lots, as the advantage coming to them from the easement in the alley was considered, as it seems, to offset the loss of the fee simple title to said fifteen feet. The alley was to be left open for the mutual convenience of all three lots, and up to the present time it has been so left and recognized by all the parties and is to the mutual advantage of all, etc.; Mrs Hughes having, from the time of the making of said deeds up to the present, occupied the lot immediately adjoining petitioner's lot, which, among other things, was a strong reason to induce petitioner to believe that she fully recognized the right to the use of the alley; etc. He joins in the prayer for injunction. Attached to his petition is a copy of the deed from Mrs. Hughes to Mrs. Hardaway, which, as part of the description of the property conveyed, states. that the lot runs back from Dawson street "a distance of 195 feet to an alley fifteen feet wide." The *habendum* clause of this deed is, " to have and to hold the above bargained and described town lot, with all and singular the rights, easements and privileges to the same in any manner belonging," etc., and there is a similar *habendum* clause in the deed from Mrs. Hughes to McIntosh, which also bears date May 12, 1884.

Mrs. Hughes answered as follows: When she sold to McIntosh and Mrs. Hardaway, she reserved for her own use a strip of land fifteen feet wide, extending from her horse-lot in the rear of her premises to Jefferson street. Her husband was at the date of said sale, and is now, a trader and dealer in horses, and she needed a large horse-lot and the strip of fifteen feet

mentioned, for this reason.   At the time she made the
sale, there was no alley extending along the rear of her
premises or over her land, but simply a strip of land
fifteen feet wide running from the rear of her horse-lot
to Jefferson street, and this strip was not an open way
but was enclosed by a fence and a gate on Jefferson
street, which remained there from the date of said sale
for about two years, when, finding that she did not need
a large horse-lot, because her husband was carrying on
his business in another city, she allowed the gate and
fence to be removed, and had for about two years and
a half left that portion of her horse-lot open on Jeffer-
son street.   She has now rented her stables and horse-
lot to other parties, and in order that the horse-lot
might be the needed size and the size she originally
intended that it should be, she replaced the fence and
gate just as they were at the time of the sale to Mc-
Intosh and Hardaway, and McIntosh, without her con-
sent, tore them down.   She sold the lands without any
reference to the use of an alley, the word alley in the
deeds being used simply to define their metes and
bounds, and the strip was called an alley because it was
only fifteen feet wide.   No consideration was paid her
for such an easement, she was only paid for lots 195 feet
deep, and Mrs. Hardaway was unwilling to pay for a
lot of greater depth or for the use of more land.   The
use of this strip in no way is necessary for the full en-
joyment of the lots of either complainant, their lots
having sufficient frontage to enable them, with slight
cost and inconvenience, to use their own land as means
of going in and out.   When Burr bought from Mrs.
Hardaway, defendant expressly notified him that the
strip of land in dispute was her private property and
might be closed at any time. ·

The case was heard upon the bill, the amendment of
Burr, the defendant's answer, and certain affidavits.

McIntosh and one Mallette made affidavits for the complainants, tending to sustain their allegations. McIntosh, among other things, swore that when he purchased, he removed the fence and gate across the entrance of the alley and has since continuously and daily used the alley as a means of reaching his barns and stables fronting thereon; that after his purchase and that of Mrs. Hardaway, Mrs. Hughes put up a fence and gate across the alley in line with the line dividing Mrs. Hardaway's lot from that retained by Mrs. Hughes; but that there has been no gate at the entrance of the alley on Jefferson street since the removal of the one mentioned, until one was placed there on the——day of February, 1889, but immediately removed. The husband of Mrs. Hughes made affidavit tending to sustain her answer. He swore, among other things, that there was no understanding between him and McIntosh and Mrs. Hardaway that the lots should run back more than 195 feet, and no purchase price was agreed upon except for lots of such depth; that the price agreed upon was without reference to the use of an alley way in the rear of the lots; that Mrs. Hardaway did not wish to pay for a lot extending back 210 feet, and there was no verbal trade or agreement by which McIntosh and Mrs. Hardaway were to have use of the fifteen foot strip of land; that at the time of the sale there was a gate on Jefferson street at the end of said strip, which remained there for about two years; and that both McIntosh and Mrs. Hardaway bought with full knowedge that this strip was to be for the private use of Mrs. Hughes, if she so desired. Two other affidavits were produced by defendant tending to corroborate the affidavit of Hughes as to the existence of the gate at the place and for the time mentioned; and one of the affiants swore that at the time of the sale from Mrs. Hughes to Mrs. Hardaway and McIntosh, there

was no open alley extending from Jefferson street along the rear of the land in question.

The presiding judge granted the injunction prayed for, to continue until the final hearing; to which decision the defendant excepted.

Alex. R. Jones, for plaintiff in error.

S. G. McLendon and Hansell & Merrill, *contra.*